IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MATTHEW CHAVIS, # 364-809 | * | |
| Plaintiff | * | |
| v | * | Civil Action No. ELH-12-283 |
| JOHN WOLFE, et al. | * | |
| Defendants | * | |

**MEMORANDUM**

Matthew Chavis has filed suit (ECF 1) as well as a Motion For Preliminary Injunction (ECF 3), claiming danger of imminent harm and request for protective custody. The Court ordered the Maryland Attorney General to respond, *see* ECF 2, and the Maryland Attorney General has done so. ECF 5. For the reasons that follow, the court finds emergency injunctive relief unnecessary, and therefore Chavis's motion (ECF 3) will be denied. Chavis will be granted twenty-eight days to notify this court whether he wants to supplement his complaint and/or pursue his claim or, instead, withdraw this case from further consideration. In any event, within forty-five days, counsel shall file a status report advising of Chavis's housing assignment.

**BACKGROUND**

Chavis is incarcerated at Jessup Correctional Institution ("JCI"). On August 31, 2011, he was assaulted by five inmates who are identified by prison security personnel as affiliates of the Dead Man Incorporated ("DMI") gang. Exhibit A, ¶ 4. Although Chavis is now in administrative segregation, housed in a single cell, he alleges that he is in continued danger of harm because he is housed near the gang members who assaulted him. Additionally, he alleges that, on an unspecified date, the doors to all cells on his tier were inadvertently opened due to "negligence" of unspecified correctional staff. He asserts: "These inmates could have easy [sic]

ran into my cell and hurted [sic] me again this time even being fatal." Complaint, ¶¶ E and F.[1] As relief, Chavis requests transfer to protective custody ("PC") at Eastern Correctional Institution ("ECI").

**FACTS**

Captain Eric Jefferson, the "Officer in Charge of the Special Housing Unit" at JCI, has filed a Declaration in which he recounts that Chavis was assaulted on August 30, 2011, by five inmates affiliated with DMI. Exhibit A, Declaration of Captain Jefferson, ¶¶ 1, 4. Chavis is also "a validated member of DMI." *Id*. Of the five inmates involved in assaulting Chavis, two have been transferred to different prisons and one was released at the end of his sentence. *Id.* ¶ 5. Although two remain at JCI, they are housed "completely separately" from Chavis, so that they have no contact with Chavis "at any time." *See id*. All five individuals are on Chavis's enemies list. Exhibit A, attachments, p. 6.

Chavis is presently on administrative segregation in the Special Housing Unit ("SHU") at JCI, where he is "single-celled and takes his recreation and other out-of-cell activities alone." Exhibit A, Declaration of Captain Eric Jefferson, ¶¶ 1-3. According to Jefferson, correctional officers serve Chavis "his meals through a meal-slot in the cell door. . . ." *See id*. Chavis "is housed separately from all general population inmates and other inmates in the SHU, and is escorted by correctional officers" when he leaves the SHU. Exhibit A, ¶ 3. These housing conditions are the safest arrangements that can be provided to Chavis at JCI. *Id*.

Indeed, since the assault, Chavis has been housed in the SHU, without incident. Exhibit A ¶ 7. Further, Captain Jefferson attests that he is unaware of an incident during which all cell doors were inadvertently opened at the same time. *See id*. ¶ 6.

---

[1] Chavis does not claim he was harmed as a result of this incident, nor does he identify the inmates.

A JCI case management team recommended to Department of Public Safety and Correctional Services ("DPSCS") headquarters that Chavis be transferred to the protective custody unit at ECI. Transfer decisions are made by a coordinator at DPSCS headquarters and there is a waiting list for ECI protective custody assignment. Exhibit A, ¶ 4. Chavis will remain at JCI on administrative segregation for his safety until a space is available in protective custody housing at ECI. *See id.*[2]

## DISCUSSION

Preliminary injunctive relief is an extraordinary and drastic remedy. *See Munaf v. Geren*, 553 U.S. 674, 689-90 (2008). To obtain a preliminary injunction, a movant must demonstrate: 1) that he is likely to succeed on the merits; 2) that he is likely to suffer irreparable harm in the absence of preliminary relief; 3) that the balance of equities tips in his favor; and 4) that an injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc. v. Federal Election Commission*, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, _U.S. _, 130 S.Ct. 2371 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (per curiam). Courts should grant preliminary injunctive relief involving the management of prisons only under exceptional and compelling circumstances. *See Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994). The plaintiff must show that the irreparable harm he faces in the absence of relief is "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Medical Group*,

---

[2] Protective custody inmates are housed in the Special Confinement Housing Unit at ECI (HU 5). Currently, there are seventy-one inmates on the PC tier, and all but twelve are double-celled. PC inmates are afforded all of the privileges of general population inmates, but are kept completely separate from the general population and the rest of the inmates in HU 5. For example, whenever PC inmates leave HU 5 for any reason, such as to go to commissary or to medical, the entire compound is shut down and cleared of all other inmates. PC inmates take their recreation in a courtyard attached to HU 5, fenced off from the rest of the prison. They are fed by PC dietary workers who deliver food to their cells. Exhibit B, Declaration of Lt. Bruce Polk, Manager, HU 5.

952 F.2d 802, 812 (4th Cir.1991) (citation omitted).

Prison officials recognize that Chavis must be housed separately and avoid contact with the DMI members who assaulted him. Chavis is housed in the safest conditions available at JCI while awaiting his recommended transfer to ECI's protective custody housing unit. The SHU manager is not aware of any incident where all cell doors were inadvertently opened at the same time. Under these circumstances, it does not appear that Chavis is likely to suffer irreparable harm absent the emergency injunctive relief he wants. Further, this Court is mindful that functions of prison management, such as housing, security, and transfer, must be left to the broad discretion of prison administrators to enable safe and effective management. *See, e.g., Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir.1991); *Wetzel v. Edwards*, 635 F.2d 283, 288 (4th Cir. 1980). However, the Court will direct counsel for the State to file a status report as to Chavis's housing assignment, within forty-five days.

## CONCLUSION

For the foregoing reasons, injunctive relief will be denied. The Court will grant Chavis twenty-eight days to advise the Court whether he wants to amend his complaint and/or pursue his case. Alternatively, Chavis may withdraw his case from further review. In any event, counsel shall file a report within forty-five days, advising the Court of Chavis's housing status. A separate Order follows.

February 14, 2012               /s/
Date                            Ellen L. Hollander
                                United States District Judge